UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

MARLENE TRAVIS and
GARY T. MCILROY, M.D.,

Plaintiffs,

v.

KURRON SHARES OF AMERICA, INC.,
CORBETT PRICE, STEVEN VOLLA
and LELAND LEBLANC,

Defendants.

CIVIL NO. 02-35 (DSD/JMM)

REPORT AND RECOMMENDATION

The above matter came on for hearing before the undersigned on February 22, 2002 upon Plaintiffs' Motion to Remand [Docket Nos. 5 and 9]. Scott A. Johnson, Esq. appeared on behalf of Plaintiffs; Timothy G. Gelinske, Esq. appeared on behalf of Defendants Kurron Shares of America, Inc., Corbett Price and Steven Volla; Jeffrey J. Bouslog, Esq. appeared on behalf of Defendant Leland LeBlanc. The matter was referred to the undersigned by the District Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b)(1)(B).

**FINDINGS OF FACT/REPORT**

This matter was removed to federal court on the grounds of diversity. All Defendants except Leland LeBlanc are residents of states other than the state of Minnesota, so there would be complete diversity if Mr. LeBlanc were not a party. Defendants contend that he was joined "fraudulently" in the sense that there are no valid claims against him, and that he was named for the purpose of defeating federal

APR 0 5 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

jurisdiction.[1]

We summarize the factual allegations in Plaintiffs' Complaint. Plaintiffs were officers of Health Risk Management, Inc. ("HRM"). They are parties to Severance Agreements with HRM. At an HRM Board meeting on March 30, 2001, Defendant Price "insisted that Plaintiffs . . . resign as officers and board members of HRM," and Plaintiffs agreed to do so in reliance on their rights under the Severance Agreements, as reaffirmed at the Board meeting. Payments under the Severance Agreements were not made. In addition, HRM "cut off [Plaintiffs] from all health insurance, life insurance, disability benefits, and all severance pay, and further failed to repay Plaintiffs their outstanding expenses and loans." In May, 2001, Plaintiffs commenced an action against HRM in Minnesota State Court, and sought a Temporary Injunction. The State Court Judge "ordered HRM to reinstate all insurance benefits." The Order also required HRM to remit Plaintiffs' severance payments to a judicial escrow account.

In August, 2001, HRM commenced a Chapter 11 Bankruptcy proceeding, staying Plaintiffs' legal action against HRM.[2] A few months later, Plaintiffs commenced the instant action, seeking to recover from the Defendants in this action essentially the same relief they have been unable to obtain from HRM by reason of the HRM bankruptcy. (The

1

"Fraudulent joinder occurs when a nondiverse party is added solely to deprive the federal courts of jurisdiction. . . . The term 'fraudulent joinder' is a bit misleading because the doctrine requires neither a showing of fraud nor joinder in one sense. To establish fraudulent joinder, a party must demonstrate either fraud in the recitation of jurisdictional facts or the absence of any possibility that the opposing party has stated a claim under state law against the party alleged to be fraudulently joined." 16 Moore's Federal Practice § 107.14[2-[c][iv][A] (3d. ed. 2001).

2

We are unable to learn from the pleadings whether HRM takes the position in the state court action that it is not obligated by the Severance Agreements, or whether its failure to pay the amounts required by those Agreements is the result of its bankruptcy.

Complaint seeks to recover damages "in the form of lost compensation due under the Severance Agreements, lost life insurance benefits, lost disability benefits, lost health insurance benefits, etc." Complaint, paragraph 22.)

## I. PROCEDURE FOR PRESENTING CLAIMS OF FRAUDULENT JOINDER

This action was commenced in State Court, and it was removed to this Court on January 7, 2002 on the basis of diversity. The action was removed within the 30 days required by 28 U.S.C. § 1446(b), and the Motion to Remand was made within the 30 days required by 28 U.S.C. § 1447(c). The issue is thus ripe for consideration.[3] We first turn to an issue raised by the Court at oral argument.

On the surface, it might appear that instead of having the federal court determine whether there is fraudulent joinder and the Motion to Remand, the issue could be resolved by a different procedure: Defendants might be required to wait to remove to federal court until the state courts resolve the question of whether the "fraudulently joined" Defendant should be dismissed. There are several reasons why this alternative approach should not be followed.

If the action is not removed within 30 days as required by the first sentence of Section 1446(b), then it would be possible to remove only on the basis of the second sentence of Section 1446(b). That statute reads as follows:

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it

---

[3] "A remand order is case dispositive under 28 U.S.C. § 636(b), and is to be decided by the District Court." Haag v. Hartford Life and Accident Ins. Co., ___F. Supp.2d ___, 2002 W.L. 424904 (D. Minn. 2002). We therefore issue our decision in the form of a Report and Recommendation to the District Court.

> may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

Defendants point out that even if LeBlanc were dismissed by the state court, this would not necessarily create a right for the remaining Defendants to remove the case to federal court. This is because if the Plaintiffs voluntarily dismiss the non-diverse Defendant, the case may be removed, but removal is improper if the dismissal of that resident Defendant was involuntary. In re Iowa Manufacturing Company of Cedar Rapids, Iowa, 747 F.2d 462 (8th Cir. 1984). See also Powers v. Chesapeake & Ohio Ry., 169 U.S. 92, 99-101 (1898).

There are also policy considerations, since "removal based on diversity of citizenship is a right conferred by Congress, the need for which 'may well be the greatest when the Plaintiff tries hardest to defeat it.'" Grassi v. Ciba-Geigy, Ltd., 894 F.2d 181, 185 (5th Cir. 1990). The goal of federal protection would not necessarily be achieved if the decision as to fraudulent joinder were committed directly or indirectly to the state courts. Finally, as a practical matter, even if use of the second sentence of Section 1442(b) carried no other risks, the time limit for such removal is one year from commencement of the action. There is no assurance that a Motion to Dismiss a fraudulently joined defendant would be determined by a state court within one year. We thus turn to the merits of the Motion to Remand.

## II. STANDARDS FOR CONSIDERING FRAUDULENT JOINDER

In deciding whether Mr. LeBlanc was joined fraudulently, the Parties agree that the Court should be guided by the opinion from this District in Schwenn v. Sears, Roebuck & Co., 822 F. Supp. 1453 (D. Minn. 1993), and the cases cited in that opinion.

There, the Court held:

> In Anderson v. Home Insurance Co., [724 F.2d 82 (8th Cir. 1983)] the Eighth Circuit stated that "[f]raudulent joinder exists if, on the face of plaintiff's state court pleadings, no cause of action lies against the resident defendant." Anderson, 724 F.2d at 84 (citing Tedder, 590 F.2d at 117) (emphasis added). In accordance with Anderson, another judge of this court recently rejected the standard that defendants urge the Court to apply here. Banbury v. Omnitrition Int'l, Inc., 818 F. Supp. 276 (D. Minn. 1993). This court agrees with the Banbury court that it is inappropriate to apply a summary judgment standard to a claim of fraudulent joinder, because the merits of an action are distinct from the jurisdictional issues presented by such a claim. The more appropriate standard for a claim of fraudulent joinder is whether there is a possibility that a state court would find that the complaint states a cause of action against the resident defendant. In addressing this issue, contested issues of fact and uncertainty as to the controlling substantive law should be resolved in favor of the plaintiff. Joinder is fraudulent only where there is no reasonable basis in fact or colorable ground supporting the claim against the resident defendant, or where the plaintiff has no real intention of prosecuting the action against the resident defendant. Banbury, at 280 (citing Boyer v. Snap-on-Tools Corp., 913 F.2d 108, 111 (3d Cir.1990), cert. denied, 498 U.S. 1085, 111 S. Ct. 959, 112 L.Ed.2d 1046 (1991)).

Schwenn, 822 F. Supp. at 1455.

## III. APPLICATION OF THE FRAUDULENT JOINDER STANDARDS

The Complaint contains five counts. Only Counts One and Three contain allegations against Leland LeBlanc. Those counts allege that he is liable for tortious interference with Plaintiffs' Severance Agreements, and "civil conspiracy" to tortiously interfere with those agreements.[4] We now consider whether Plaintiffs have a chance of success in proceeding with these allegations against Mr. LeBlanc.

---

4

In addition to the Tortious Breach of Contract and Conspiracy Counts, the counts against the other Defendants claim Fraud, Insider Preference and Breach of Fiduciary Duty to Creditors.

Plaintiffs state that a cause of action for tortious interference with contract contains these elements:

> Under Minnesota law, to prevail on a claim of tortious interference with contract, a plaintiff must prove: (1) that a contract existed; (2) that the alleged tortfeasor knew of the contract; (3) that the alleged tortfeasor intentionally interfered with the contract; (4) that the interference was not justified; and (5) that damages resulted.

Major Computer Incorporated v. Academy Life Ins. Co., 929 F.2d 1249 at 1250 (8th Cir. 1991). Defendants essentially agree, but cite instead McClure v. American Family Mutual Ins. Co., 29 F. Supp.2d 1046, 1062 (D. Minn. 1998), aff'd, 223 F.3d 845 (8th Cir. 2000).

There is no real dispute as to the first two elements. As to the third element concerning whether there was interference, (and if so, whether it was intentional,) the Complaint alleges only that all of the Defendants (of which Mr. LeBlanc is one) "instructed the Human Resources Department to cut off all pay and benefits enjoyed by plaintiffs under their Severance Agreements, and withhold payment of the expenses and loans owed to plaintiffs." Complaint, Paragraph 17. It goes on to allege that "Defendants [sic] also falsely advised the HRM Board of Directors that (a) plaintiffs had engaged in 'criminal misconduct' and (b) plaintiffs had violated fiduciary responsibilities to the corporation."

Paragraph 18 relates to the fifth element of tortious interference concerning damages. It alleges: "As a result of defendants' [sic] representations to the Board and their direct instructions to the Human Resources Department, HRM breached the two year Severance Agreements."

As to the fourth element relating to "justification" or "privilege," the essential distinction is between a contract action for breach of contract, and a tort action for causing the breach. As explained by the Minnesota Supreme Court in Nordling v. Northern States

Power Company, 478 N.W.2d 498 at 505-506 (Minn. 1991):

> The general rule is that a party cannot interfere with its own contract. Bouten v. Richard Miller Homes, Inc., 321 N.W.2d 895, 900-01 (Minn. 1982). If a corporation's officer or agent acting pursuant to his company duties terminates or causes to be terminated an employee, the actions are those of the corporation; the employee's dispute is with the company employer for breach of contract, not the agent individually for a tort. To allow the officer or agent to be sued and to be personally liable would chill corporate personnel from performing their duties and would be contrary to the limited liability accorded incorporation.

The Nordling Court went on to note that "a corporate officer or agent may be liable for tortious interference if he or she acts outside the scope of his or her duties." Id. at 506. The Court explained:

> The burden of proving actual malice is on the plaintiff. On the other hand, the defendant, to show that he had legal justification and excuse for his actions, may show that he was privileged by his position with the common employer to do what he did.
>
> To put the matter another way, we conclude that a company officer, agent or employee is privileged to interfere with or cause a breach of another employee's employment contract with the company, if that person acts in good faith, whether competently or not, believing that his actions are in furtherance of the company's business. This privilege may be lost, however, if the defendant's actions are predominantly motivated by malice and bad faith, that is, by personal ill-will, spite, hostility, or a deliberate intent to harm the plaintiff employee.

Nordling, 478 N.W.2d at 507.[5]

We do not find in the Complaint any allegations concerning the fourth element concerning "justification" or "privilege." It does not allege that Mr. LeBlanc's

---

5

Plaintiffs also rely upon an unpublished opinion of the Minnesota Court of Appeals, Bushard v. Independent School District No. 833, 2001 WL 32805.

actions were motivated in any way by any malice against any Plaintiff, nor that they were outside the scope of his employment.

Plaintiffs suggest that the Court look in paragraphs 15 and 17 of the Complaint as to this issue. Paragraph 15 alleges that the Severance Agreements were expressly authorized by the Board of Directors, and paragraph 17 alleges that "defendants Kurron Shares, Corbett Price, Steve Volla, and Leland LeBlanc - in direct contravention to the Board of Directors' expressed authorizations reflected in the transcript and minutes of that meeting and the formal board resolution passed at that meeting - instructed the Human Resources Department to cut off all pay and benefits enjoyed by plaintiffs under their Severance Agreements . . .." The underscored language, Plaintiffs argue, substantiates their argument that "Mr. LeBlanc's actions in ordering his personnel department to breach plaintiffs' Severance Agreements, just days after the Board of Directors had specifically affirmed those agreements, raise serious inferences of malice and bad faith. Mr. LeBlanc was, after all, the Chief Financial Officer of the corporation, and in close contact with Messrs. Volla and Price, who were essentially running the affairs of HRM in March, 2001." Plaintiffs' Memorandum in Support of Motion to Remand, p. 5. [Docket No. 6]. Plaintiffs further note that "Health Risk Management, Inc. was insolvent in March and April, 2001, at the time that Leland LeBlanc committed his ultra vires acts." Id., p. 6.

There are serious difficulties with this argument. First of all, as we have just seen, the Complaint does not allege that Mr. LeBlanc did anything on his own, let alone that he "ordered his personnel department to breach plaintiffs' severance agreements." The Complaint vaguely alleges that all of the Defendants somehow took action collectively which had the result of stopping all pay and benefits to Plaintiffs. And taking at face value

Plaintiffs' argument that Defendants Volla and Price "were essentially running the affairs of HRM" at the time, and that the Company was out of money, this undercuts the argument that Defendant LeBlanc acted in some way other than in a good-faith effort to preserve precious Company cash, a direct responsibility of a Chief Financial Officer.[6]

We are satisfied, based upon the pleadings submitted by the Parties, that Defendants have satisfied their burden of establishing that the joinder of Leland LeBlanc as a Defendant was "fraudulent" within the meaning of that phrase as it has been developed by the courts in the context of removal proceedings. There is not a reasonable possibility that the state court would conclude that the Complaint states a cause of action against Leland LeBlanc, and there is no reasonable basis to conclude that Mr. LeBlanc did acts which constitute the elements of tortious interference with contract. Count Three alleging a conspiracy must also fail, in the absence of the underlying tort. See, e.g., Harding v. Ohio Cas. Ins. Co. of Hamilton, 41 N.W.2d 818 (Minn. 1950).

The Parties have not extensively addressed the issue of what facts may be considered by the Court in the consideration of this Motion. In our review of the issue, we have confined ourselves to the pleadings of the Parties, and the affidavits and arguments asserted by Plaintiffs, and have not considered affidavits submitted by Defendants. Having concluded that the Motion to Remand should be denied based upon that more limited record, we need not address the question of whether the Court should consider additional materials relied upon by Defendants.

---

6

It might even be said that the effort to preserve cash was as much for the benefit of Plaintiffs and other creditors as it was for the Company, since it would not be possible for the Company to have honored any of its contracts if it were no longer in business.

**RECOMMENDATION**

For the reasons set forth above, it is recommended that Plaintiffs' Motion to Remand [Docket Nos. 5 and 9] be denied.

Dated: April 5, 2002

JOHN M. MASON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **April 22, 2002** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **April 22, 2002**.