UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 02-35(DSD/SRN)

Marlene Travis and
Gary T. McIlroy, M.D.,

Plaintiffs,

v. **ORDER**

Kurron Shares of America,
Inc., Corbett Price and
Steven Volla,

Defendants.

Todd M. Johnson, Esq., Scott A. Johnson, Esq. and Johnson Law Group, 10801 Wayzata Boulevard, Suite 120, Minnetonka, MN 55305, counsel for plaintiffs.

Richard G. Mark, Esq., Timothy G. Gelinske, Esq., Steven P. LaPierre, Esq. and Briggs & Morgan, 2200 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402, counsel for defendants.

This matter is before the court upon the motion for summary judgment of defendants Kurron Shares of America ("Kurron"), Corbett Price ("Price") and Steven Volla ("Volla") and upon the motion for partial summary judgment of plaintiffs Marlene Travis ("Travis") and Dr. Gary T. McIlroy ("McIlroy"). Based upon a review of the file, record and proceedings herein, and for the reasons stated, the court grants in part and denies in part defendants' motion for summary judgment and denies plaintiffs' motion for partial summary judgment.

FILED JUL 21 2003
Richard D. Sletten, CLERK
Judgment Ent'd. ______
Deputy Clerk's Initials ______

**BACKGROUND**

This action involves a dispute about entitlement to severance benefits. Plaintiffs allege that defendants acted outside the scope of their authority and contrary to Minnesota statutory and common law by terminating their severance benefits. (Pls.' Resp. Defs.' Mot. Summ. J. at 9.) Plaintiffs therefore brought an action against defendants for tortious interference with contract, fraud, civil conspiracy insider preference, and breach of fiduciary duty to creditors. (LaPierre Aff. Ex. N at 6-8.)

Plaintiffs co-founded Health Risk Management ("HRM") in 1977. HRM provided health benefit plan management services. Travis served as its President and Chief Operating Officer ("COO"). McIlroy served as its Chief Executive Officer ("CEO") and Chairman of the Board. In 2000, HRM experienced significant financial and managerial difficulties. To maintain enough capital to continue operations, HRM borrowed money from PA HMO, a Medicaid HMO owned by HRM's subsidiary HRM Health Plans (PA), Inc. (LaPierre Aff. Ex. F at 37-38.) HRM's independent auditor, Ernest and Young, refused to accept McIlroy's representations on any management statement from HRM. (LaPierre Aff. Ex. A at 75.) In addition, a management review conducted by HRM's outside directors concluded that "[t]he company [had] been managed to the brink of financial disaster."

(LaPierre Aff. Ex. J at 16.) The report recommended that Travis and McIlroy resign their positions as officers or be removed by the Board and that the board elect a new chairman. Id. at 17.

To secure the necessary financing to avoid bankruptcy, both McIlroy and Travis were required to resign their positions as directors and officers in March 2001. (LaPierre Aff. Ex. N at 22-25 of Compl. Ex. C.) The financing agreement produced several other management changes. Kurron, Price and Volla were hired as consultants to assist the company with its financial difficulties. Price was named Chairman of the Board. Volla became a director. In addition, HRM created an Executive Committee that possessed the powers of a CEO. Both Volla and Price were placed on the committee.

For the purposes of this motion, the defendants concede that HRM agreed to pay plaintiffs certain benefits in exchange for their resignations. (Mem. Supp. of Remaining Defs.' Mot. Summ. J. at 1.) McIlroy resigned as CEO on March 28, 2001. The board, which did not include Price or Volla at that time, agreed to treat McIlroy's resignation as a termination without cause under his current employment agreement. (LaPierre Aff. Ex. A at 146-48.) At the next board meeting on March 30, 2001, McIlroy resigned as Chairman of the Board, and Travis resigned as President and COO. An audiotape recorded the discussion between McIlroy, Travis, and Price regarding the severance benefits. Price stated "my

resolution is that [plaintiffs] basically be removed from the board of directors ... and as officers of the corporation in exchange for the full pay out of [their] two-year severance arrangements ... where the company will not contest [their] ability to receive [their] severance." (LaPierre Aff. Ex. N at 48 of Compl. Ex. C.) McIlroy insisted that the board formally vote on the resolution and acknowledged that he "[w]as not going to just take Corbett Price's word for it." (LaPierre Aff. Ex. A at 204.) Travis also stated that "[she] knew that [she] had no reason to really trust [the new management] team." (LaPierre Aff. Ex. C at 59.) The final resolution, unanimously passed by the board, provided that in exchange for plaintiffs' resignations, "[t]he company will honor any severance agreements that are in place." (Johnson Aff. Ex. A. at 48.)

Plaintiffs' severance and insurance benefits were stopped on April 19, 2001. (LaPierre Aff. Ex. G at 48.) The parties dispute who authorized the termination of benefits. Plaintiffs allege Volla and Price ordered plaintiffs' benefits to be terminated without board approval. (Mem. Supp. Pls.' Partial Mot. Summ. J. at 10.) Dawna Bowman, director of human resources for HRM, testified that Volla or Price ordered the termination of plaintiffs' benefits. (LaPierre Aff. Ex. G at 41.) Plaintiffs assert that the board never voted to terminate plaintiffs' benefits. (Mem. Supp. Pls.' Partial Mot. Summ. J. at p. 11.) Defendants assert that St.

John's notes show the board decided to investigate whether plaintiffs had breached their fiduciary duty to HRM by authorizing or permitting the transfer of funds from the PA HMO to HRM and that the board decided not to pay benefits to plaintiffs until the investigation was complete. (Mem. Supp. of Remaining Defs.' Mot. Summ. J. at 13.) Contrary to Bowman's testimony, Volla stated that he did not order the termination of plaintiffs' benefits. (Johnson Aff. Ex. F at 158.) Similarly, Price stated he did not recall who issued the order for termination. (LaPierre Aff. Ex. E at 197.)

In May 2001, plaintiffs filed a lawsuit alleging that HRM failed to honor the terms of their severance agreement. The Hennepin County District Court ordered HRM to reinstate plaintiffs' benefits and to escrow plaintiffs' severance payments with the court pending arbitration of plaintiffs' claims. HRM filed for bankruptcy in August 2001. Plaintiffs' initial lawsuit was automatically stayed under 11 U.S.C. § 362. Plaintiffs' then filed this action in Hennepin County District Court alleging tortious interference with contract, fraud, civil conspiracy, insider preference and breach of fiduciary duty to creditors. (LaPierre Aff. Ex. N at 6-8.) Defendants removed the case to this federal court. Defendants now move for summary judgment on all claims. (Mem. Supp. of Remaining Defs.' Mot. Summ. J. at 3, 30.) Plaintiffs move for partial summary judgment on the issue of absence of justification for the tortious termination of

plaintiffs' severance benefits. (Mem. Supp. Pls.' Mot. Partial Summ. J. at 1.) After careful consideration, the court denies plaintiffs' motion for summary judgment. The court also grants in part and denies in part defendants' motion for summary judgment.

**DISCUSSION**

**I. Standard for Summary Judgment**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)(quoting Fed. R. Civ. P. 56(c)). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 251-52.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party.

See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

**II. Parties' Motions for Summary Judgment**

The court now turns to defendants' motion for summary judgment on each of plaintiffs' claims and to plaintiffs' motion for partial summary judgment on an element of the tortious interference with contract claim.

**A. Tortious Inference with Contract**

The court has carefully reviewed the record with regard to defendants' motion for summary judgment on plaintiffs' tortious interference with contract claim and concludes that plaintiffs have introduced substantial evidence on critical fact issues. Viewing the record in the light most favorable to the non-moving party, as is required under Fed. R. Civ. P. 56, the court concludes that genuine issues of material fact exist as to plaintiffs' claims against defendants for tortious interference with contract. The court has also reviewed the record with respect to plaintiffs' motion for partial summary judgment on the absence of justification

and concludes that genuine issues of material fact exist as to that element of plaintiffs' claim. Summary judgment is therefore inappropriate on plaintiffs' tortious interference with contract claim, including the absence of justification element. See Celotex, 477 U.S. at 322-23.

**B. Civil Conspiracy**

Defendants also move for summary judgment on plaintiffs' civil conspiracy claim, arguing that the court should grant the motion because plaintiffs' tortious interference with contract claim fails and thus there is no underlying tort. Defendants' argument fails because a question of fact exists as to plaintiffs' tortious interference with contract claim. Accordingly, the court denies defendants' motion for summary judgment on plaintiffs' civil conspiracy claim.

**C. Fraud**

Plaintiffs assert a fraud claim against Price, specifically alleging:

> Defendant Corbett Price committed fraud in the repeated assurances which he provided to plaintiffs at the March 30, 2001 Board Meeting. Defendant Price, who, within days after assuring plaintiffs at the Board Meeting that their benefits would be honored under their Employment/Severance Agreements, and their salaries paid, caused the corporation to renege on those commitments. In making the assurances at the March 30, 2001 Board Meeting, defendant Price had no present intention of honoring those commitments. His statements that the corporation would honor those agreements were therefore fraudulent,

> were material, and were relied upon by plaintiffs, resulting directly in harm to plaintiffs in amounts in excess of $50,000.

(LaPierre Aff., Ex. N. ¶ 27.) Defendants move for summary judgment, arguing that plaintiffs cannot establish reliance.

To establish fraud, a claimant must prove the following elements:

"1. There must be representation;

2. That representation must be false;

3. It must have to do with a past or present fact;

4. That fact must be material;

5. It must be susceptible of knowledge;

6. The representer must know it to be false, or in the alternative, must assert it as of his own knowledge without knowing whether it is true or false;

7. The representer must intend to have the other person induced to act, or justified in acting upon it;

8. That person must be so induced to act or so justified in acting;

9. That person's action must be in reliance upon the representation;

10. That person must suffer damage;

11. That damage must be attributable to the misrepresentation, that is, the statement must be the proximate cause of the injury."

M.W. Vandeputte v. Soderholm, 216 N.W.2d 144, 146 (Minn. 1974)(quoting Hanson v. Ford Motor Co., 278 F.2d 586, 591 (8th Cir. 1960); see also Avery v. Solargizer Int'l, Inc., 427 N.W.2d 675, 681 (Minn. Ct. App. 1988). Reliance is an essential element of fraud. Nicollet Restoration, Inc. v. City of St. Paul, 533 N.W.2d 845, 846 n.2 (Minn. 1995)("[D]etrimental reliance is an essential element of a number of causes of action, including ... fraud, which sounds in tort."); R.A.P. v. B.J.P., 428 N.W.2d 103, 109 (Minn. Ct. App. 1988)(stating that a party asserting fraud must actually act in reliance on the false representation).

In this case, plaintiffs' deposition testimony clearly illustrates that plaintiffs did not rely on Price's assurances that HRM would honor plaintiffs' severance agreements. In McIlroy's deposition, he repeatedly stated that he believed that only the board of directors had the authority to agree to honor the severance agreements and that it was the board of directors who agreed to honor plaintiffs employment and severance benefits. (LaPierre Aff. Ex. A at 161-63, 190-91, 203-04.) McIlroy also admitted that he was "not just going to take Corbett Price's word for it." (LaPierre Aff. Ex. A at 204.) Likewise, Travis acknowledged that she "had no reason to really trust this new team

that was coming in." (LaPierre Aff. Ex. C at 59.) She conceded that she wasn't "going to rely on anything the new team said, [she] wanted the board to vote...." (LaPierre Aff. Ex. C at 59.) Because plaintiffs' testimony clearly illustrates that they did not rely upon Price's assurances, plaintiffs cannot establish that element of fraud. The court therefore grants defendants' motion for summary judgment on plaintiffs' fraud claim.

**D. Insider Preference and Breach of Fiduciary Duty to Creditors**

Plaintiffs also allege claims for insider preference and breach of fiduciary duty against defendants Kurron Shares of America, Inc., Price and Volla. Those claims essentially allege one cause of action.

> Directors and officers may make loans to their corporations and they may use the same methods as other creditors to collect bona fide corporate debts owed to them, but only so long as the corporation is solvent. When a corporation is insolvent, or on the verge of insolvency, its directors and officers become fiduciaries of the corporate assets for the benefit of creditors.

Helm Fin. Corp. v. MNVA R.R., Inc., 212 F.3d 1076, 1081 (8th Cir. 2000)(quoting Synder Elec. Co. v. Ace Mfg., Inc., 305 N.W.2d 863, 869 (Minn. 1981)). "As fiduciaries, they cannot by reason of their special position treat themselves to a preference over other creditors." Synder Elec. Co., 305 N.W.2d at 869.

A "preference" means "a transfer or encumbrance of corporate assets made while the corporation is insolvent or verges on

insolvency, the effect of which is to enable the director or officer to recover a greater percentage of his debt than general creditors of the corporation with otherwise similarly secured interests." Id. "The fiduciary duty of an insolvent corporation's directors and officers to preserve and protect the assets of the corporation does not extend beyond the prohibition against self-dealing or preferential treatment." Helm Fin. Corp., 212 F.3d at 1081.

In this case, defendants played no role in authorizing payments of their own fees. While LeLand LeBlanc testified that Price and Volla "said that they would be controlling any expenditures the company made and primarily in regard to any payments that would be going out to anyone," (Johnson Aff. Ex. I at 56), the undisputed evidence indicates that defendants did not control payments to themselves. Gary Damkoehler, a member of the audit committee that was created to address payments to defendants, reviewed all invoices from defendants and approved all payments to them. (LaPierre Aff. Ex. I at 42; LaPierre Aff. Ex. K at 110.) Damkoehler did not know of a single instance where defendants were paid without his approval. (LaPierre Aff. Ex. I at 42.) Because no facts suggest that defendants authorized the payments to themselves and because the facts indicate that the payments received were made in "good faith" and were "not a preference," the

court grants defendants' motion for summary judgment on plaintiffs claims of insider preference and breach of fiduciary duty.[1]

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendants' motion for summary judgment [Docket No. 87] in granted in part and denied in part,

   a. Defendant's motion for summary judgment on plaintiffs' claim of tortious interference with contract and civil conspiracy is denied,

   b. Defendants' motion for summary judgment on plaintiffs' claims of fraud, insider preference and breach of fiduciary duty is granted,

---

[1] The law distinguishes between payment for current debt and antecedent debt. "An insolvent corporation may assign, convey or encumber property if necessary to secure loans from officers and directors, where the proceeds are used in good faith to pay debts and the security is given contemporaneously with the loan." Synder Elec. Co., 305 N.W.2d at 869. While an insolvent corporation may reimburse corporate executives for personally paying current corporate debts, the payment or grant of security by an insolvent corporation to its officers and directors for antecedent debt to them is an invalid preference. Id.

In this case, plaintiffs do not allege that the payments to defendants were for antecedent debts. Instead, the payments were for compensation for current and ongoing services. Thus, even if plaintiffs claims of insider preference and breach of fiduciary duty otherwise withstood summary judgment, which they do not, plaintiffs claims against defendants nevertheless likely would fail because those claims were not for antecedent debt.

2. Plaintiffs' motion for partial summary judgment [Docket No. 76] is denied.

Dated: July 21, 2003

David S. Doty, Judge
United States District Court